MAINE STEEL, INC. *vs.* MEAD-MORRISON SALES CORP. *et al.*

MARCH 9, 1944.

PRESENT: Flynn, C. J., Moss, Baker and Condon, JJ.

FLYNN, C. J. This bill in equity was brought against certain officers and directors of the respondent corporation to enforce a liability created by the general laws of Massachusetts (Ter. Ed.) chapter 156, sections 37 and 38; and also for other equitable relief independent of that statute. The superior court overruled the respondents' demurrers to the amended bill of complaint and the cause was then heard on bill, answers, replications and evidence. Thereupon a decision was rendered in favor of the complainant on both aspects of the bill, and after the complainant, by leave of

court, had filed additional grounds of complaint to conform to the proof, a final decree was entered, ordering the respondents David Dwares and Sam Mencoff to account to complainant for the sum of $1000 with interest. The cause is before us on an appeal by those respondents from that decree.

The complainant is a Maine corporation which became the owner of a certain snow plow that is involved in this dispute. The respondent Mead-Morrison Sales Corporation was a Massachusetts corporation but was not served with process because its charter had been forfeited. The only respondents therefore are Sam Mencoff and David Dwares, who were president and treasurer respectively of said Mead-Morrison Sales Corporation and the sole officers and directors thereof.

The evidence discloses the following facts which are admitted or proved. Complainant, by assignment from its predecessor, became and was the owner of a "Sargent Snow Plow Serial #2-B" which was held for it, on consignment, by another company in Buffalo, New York. That company also held on consignment some tractors and equipment made and owned by Mead-Morrison Manufacturing Company, a Massachusetts corporation. Later receivers for the Mead-Morrison Manufacturing Company were duly appointed by the United States district court in Massachusetts and they proceeded, with the approval of the court, to liquidate the assets of that corporation. Accordingly they negotiated a sale of all its equipment, patents and assets, exclusive of buildings, to Walter E. O'Hara and the respondent Dwares, each of whom had advanced one-half of the purchase price.

For some reason the formal agreement of that sale was executed by the receivers and another corporation controlled by O'Hara; but it was expressly understood that the Mead-Morrison Sales Corporation would be organized for the purpose of carrying out that contract of sale with the receivers. This new corporation, Mead-Morrison Sales Corporation, hereinafter called the Sales Corporation, was or-

ganized under the laws of Massachusetts and all of the assets and equipment under the above-mentioned contract were duly sold to it and became its property.

Thereafter, on March 14, 1934, upon request, the company in Buffalo shipped to the Sales Corporation at East Boston certain tractors and equipment which were in its custody and which had belonged to the old Mead-Morrison Manufacturing Company that was in receivership. This shipment, however, also included the snow plow which belonged to the complainant. The entire shipment, including the plow, was received and receipted for by the Sales Corporation which, on April 18, 1934, wrote the complainant: "It is also our understanding that this plow is to remain on loan until sold."

Later, in reply to complainant's request for a signed "Loan Receipt", the Sales Corporation on April 25, 1934 wrote: "There is no question about the fact but what this Plow is owned by your Company . . . . We can emphatically state to you that the Plow when returned to you, if not sold by us, will be in as good condition as it is at the present time. For your further information we wish to advise that this Plow is now located in our East Boston Plant and you can make an inspection of same if you care to." This letter was written on the stationery of the Sales Corporation, described therein as "Successors To Mead-Morrison Mfg. Co.". It was signed for the Sales Corporation by Jacob Ziskind, who was one of its incorporators and who apparently was then acting as its general manager in selling the equipment which had been originally purchased from the receivers. During this time the respondent Dwares was represented at the Sales Corporation plant by the respondent Mencoff.

Thereafter the respondent Dwares purchased from his associate O'Hara all of the latter's interest in the Sales Corporation and its assets; and Mencoff, who had been working with Ziskind at the time in liquidating the equipment, became the president of the Sales Corporation and Dwares became its treasurer.

In February 1935 the Sales Corporation attached the complainant's snow plow to one of its own tractors and sold and delivered both to the city of Chelsea, receiving in payment therefor that city's check in the sum of $4800, payable to the Sales Corporation. This check was indorsed by the respondents, as president and treasurer respectively of the Sales Corporation, and admittedly the proceeds therefrom were transferred to the private account of the respondent Dwares. A portion thereof was then paid to the respondent Mencoff as his share or for a commission. No notice of the sale of the plow was ever given to the complainant and no part of the sale price received therefor was ever paid to it.

Sometime later the complainant heard of this sale and mailed to the Sales Corporation an invoice for $1000, the value of the plow. To this demand the Sales Corporation replied by letter, dated November 1, 1935, stating that its officials "now (know) nothing of any plow from your plant". Shortly thereafter the respondents negotiated and carried out for the Sales Corporation a sale of all its remaining assets and equipment to a new corporation, which is not concerned here, for substantially $9000. This amount likewise was transferred ultimately to the respondent Dwares, leaving no assets of any kind in the Sales Corporation itself, although both respondents then had notice of complainant's claim.

Then the respondents deliberately defaulted in their obligations under the Massachusetts law in connection with corporation returns or taxes, so that the state forfeited the charter of the Sales Corporation. This was not found out by the complainant until it attempted to bring an action in Massachusetts against the Sales Corporation, which could not be served with process because that corporation was then defunct and its sole officers and directors were residents of Rhode Island. Accordingly the instant suit in equity was brought against the respondents in this state.

The respondents first contend that the bill was demur-

rable chiefly because it was based entirely upon the Massachusetts statute; that such statute created a new liability against officers and directors of corporations; and that, as part of the complainant's right to enforce such liability, that statute provided a procedural remedy which was enforceable exclusively in the courts of Massachusetts. They further claim, in substance and effect, that the bill fails to state a cause cognizable in equity and that in any event complainant had an adequate remedy at law.

Assuming that the respondents' contention in respect to the Massachusetts statute is correct, their demurrers nevertheless were properly overruled, if the bill had another aspect which stated a cause for equitable relief independent of that statute. While it appears that the complainant sought relief primarily under chapter 156 of the general laws of Massachusetts, a close examination of the bill shows allegations of facts which, if proved, would also support the second or general prayer in the bill for equitable relief independent of that statute. These allegations, being admitted by the demurrers, tend to show that the complainant under all the circumstances was without an adequate remedy at law and had stated a cause that comes within recognized equity jurisdiction. For the application of similar underlying principles see *Home Savings Bank* v. *Rolando,* 65 R. I. 380, 387. See also *Reynolds* v. *Stevens,* 66 R. I. 220. Upon such a view of the bill the trial justice was justified in overruling the respondents' demurrers.

The respondents next contend that, even if a creditor of the Sales Corporation was entitled to enforce in this state the liability that was created against corporation officers and directors by the Massachusetts statute, the complainant's evidence failed to establish compliance with all the conditions precedent to the granting of such relief, citing general laws of Massachusetts, chap. 156, secs. 35 to 39. We need not discuss this point because, as above stated, we have assumed the correctness of respondents' contention that a creditor's right against officers and directors of a corporation,

if based entirely upon this Massachusetts statute, is cognizable exclusively in that state.

Upon that assumption, the controlling question here is whether the evidence supported the granting of other equitable relief independent of that statute. As we view it, the substance of such relief was not based by the decree upon the complainant's right as a *creditor* in the ordinary sense; but it was based upon the complainant's right, as *owner* of certain property, to follow and reclaim the specific proceeds from its sale which, in the possession of the respondents by wrongful conversion, were affected by an implied trust for the benefit of complainant. For a discussion of such principle as being within recognized equity jurisdiction see *Slater* v. *Oriental Mills*, 18 R. I. 352 and *Hungerford* v. *Curtis*, 43 R. I. 124, 131.

Upon that view of the bill and decree, an examination of the transcript leads us to conclude that the evidence supported the decree for an accounting as entered. When the Sales Corporation sold the plow that admittedly belonged to the complainant and received payment therefor from the city of Chelsea, it held that portion of the proceeds representing the value of the plow for the benefit of the complainant. It had no right in the circumstances to transfer such money to the respondents in their capacity as officers, directors or creditors because it belonged equitably to the complainant and not to the corporation. The complainant then had the right in equity, as against the Sales Corporation, to have that money impressed with a trust in its favor and to have an accounting to the extent that the money represented the value of the plow.

The respondents had no more right in equity and good conscience to retain such money than the Sales Corporation had. As sole officers and directors of that corporation, which had expressly acknowledged to the complainant the conditions under which it held the plow, they took the proceeds of its sale with notice that they were impressed with a fidu-

ciary obligation which the corporation owed directly to the complainant as owner.

Moreover, the complainant's right to have an accounting from the respondents in equity is emphasized by evidence of the respondents' conduct after they had actual notice of the complainant's rights and claim. Notwithstanding such notice, the respondents refused to remit the money to the complainant; proceeded to sell all of the remaining assets of the Sales Corporation and to appropriate to themselves the proceeds therefrom, leaving the Sales Corporation with no assets whatever to meet the complainant's claim; and then deliberately defaulted in their official obligations to the state of Massachusetts, in connection with corporation returns or taxes, with the result that the corporation charter was forfeited.

From such conduct, considered with other admitted or proved facts, the trial justice concluded, in substance and effect, that the respondents had not acted in good faith; that notwithstanding notice to them that complainant was the equitable owner of such proceeds as were received by the corporation from the sale of complainant's snow plow, they nevertheless appropriated and retained to themselves such proceeds, and later disposed of all the assets of that corporation; that the respondents, in possession of such proceeds by conversion, owed a fiduciary obligation directly to the complainant, as the equitable owner thereof, to the extent of the reasonable value of the snow plow; that such reasonable value was found, on conflicting evidence, to be $1000; and that complainant therefore was entitled to a decree in equity by way of an accounting. An examination of all the facts and circumstances in evidence, in our opinion, justifies the trial justice's conclusions on the second aspect of the bill, and also the relief granted by the decree as entered.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed as to the relief granted there-

in, and the cause is remanded to the superior court for further proceedings.

*William A. Gunning,* for complainant.

*Max Winograd, Marshall B. Marcus,* for respondents.